### UNITED STATES of America
### v.
### Kenneth Stanley SHUTE et al.
### No. P–75–CR–3.

United States District Court, W. D. Texas, Pecos Division.

Sept. 10, 1975.

Wayne F. Speck, Asst. U. S. Atty., San Antonio, Tex., for plaintiff.

John L. Hoestenbach, Jr., Odessa, Tex., for defendants.

## AMENDED ORDER GRANTING DE-FENDANTS' MOTION TO SUPPRESS

SUTTLE, District Judge.

In view of the recent triumvirate of border search and seizure cases, *Almeida-Sanchez v. United States*, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973); *United States v. Ortiz*, 422 U.S. 891, 95 S.Ct. 2585, 45 L.Ed.2d 622 (1975); and *United States v. Brignoni-Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975), the only issue this Court must determine is whether the border patrolmen were acting upon a reasonable suspicion that a crime had been committed when they stopped the defendants' vehicles, searched them, and subsequently seized a large quantity of marijuana.[1]

The events of the morning of December 22, 1974, are primarily undisputed. Border patrol officers Wilson and Smith were conducting a roving patrol in an area thirty-two miles south of Alpine, Texas, acting on orders to stop all vehicles that were proceeding north from the border that could be used to transport and conceal illegal aliens. At approximately 2 A.M. the officers, who had positioned their vehicle sometime earlier a distance off the main road at a point where they could observe traffic proceeding north along Texas highway 118, observed two vehicles, a pickup and a late model sedan pulling an enclosed U-haul trailer, proceeding north along highway 118. Believing the vehicles to be the same ones seen earlier proceeding south toward the border on that same highway, and having seen no other traffic that evening, the officers moved to intercept the two vehicles. Without using their vehicle's lights, the officers maneuvered their patrol car closely behind the car and trailer, which was travelling some distance behind the pickup. The officers testified that both the car and U-haul trailer appeared to be heavily loaded, and that the trailer was carrying an out of state license plate. At this point the officers turned on the patrol car's lights

---

1. The parties have stipulated that the search was not conducted with either the voluntary consent of the defendants or a valid search warrant. It was also stipulated that the patrolmen were not acting upon information provided by an informant.

and signaled for the car to pull over. Upon stopping the car, the officers approached the occupants, defendants Seaton and Shute, and asked their citizenship. Both replied, "American." The officers then asked what the defendants were doing, to which defendant Shute replied that they had been visiting his sister in Redford, Texas. When asked about the occupants of the pickup, defendant Shute denied any knowledge of the identity of the occupants, or that his vehicle and the pickup were intentionally travelling in tandem. At this point the officers asked the defendants to open the car's trunk and the doors of the U-haul trailer, but before proceeding with the search of the contents the officers noticed that the pickup had turned around and was proceeding back down the highway toward the defendants' car and trailer. Upon reaching the car and trailer, however, the pickup did not stop, but continued to travel at a moderate pace south on highway 118. After instructing the defendants Shute and Seaton to stay put, the officers climbed in their patrol car and gave chase. The pickup carrying defendants Sisneros and Evans was eventually stopped after it had subsequently turned around and was again proceeding north toward the car and trailer. Although upon questioning, defendants Sisneros and Evans denied knowing the occupants of the car and trailer, and denied any knowledge of the content of the car's trunk or the contents of the trailer, the officers noticed that the bed of the pickup contained an unusual packing material similar to that observed earlier in the U-haul trailer. The pickup with defendants Sisneros and Evans was escorted back to where the defendants Shute and Seaton had been told to remain. A subsequent search of the U-haul trailer revealed over 500 pounds of marijuana concealed under a plastic liner covered with foam rubber packing. The defendants were subsequently placed under arrest.

■■ While the legal distinction between a roving patrol and a fixed check point at the border. or its functional equivalent is generally immaterial regarding the necessity for probable cause before a warrantless search and seizure, in this case the fact that the officers were conducting a roving patrol rather than operating out of a fixed check point is particularly significant, since it bears directly on the propriety of the initial stop of the defendants' vehicle. *United States v. Ortiz,* 422 U.S. 891, 95 S.Ct. 2585, 45 L.Ed.2d 622 (1975). At fixed traffic check points, vehicles may be routinely stopped, in the complete absence of suspicious circumstances, for the limited purpose of inquiring about citizenship; however, before a vehicle may be stopped by a roving patrol, even for this limited purpose, the officers must have sufficient articulable facts to create a reasonable suspicion that the vehicle's occupants are in violation of the law. *United States v. Brignoni-Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975).

■ In this case, the articulable facts known to the officers at the time they stopped the defendants' vehicles, were that the two vehicles appeared to be travelling north together on Texas highway 118 from the direction of Redford, Texas, at 2 A.M., that the defendants' vehicles appeared to be the same ones seen four hours earlier travelling south on that same road, that both vehicles were large enough to carry illegal aliens, and that the second vehicle and trailer appeared to be somewhat heavily loaded.[2] These observations, in and of themselves, were manifestly insufficient to create a reasonable suspicion that the vehicles contained illegal aliens, even though such observations were made by experienced border patrolmen. In this case, it is apparent that the defendants were stopped not because their conduct created

2. The Court does not consider the fact that the officers observed an out of state license plate of the defendants U-haul trailer as significant in any respect.

suspicion in the minds of veteran border patrolmen, but because the officers were acting under orders to stop *all* vehicles capable of carrying concealed illegal aliens that were proceeding north on highway 118. Searches conducted by roving patrols pursuant to such indiscriminate orders to stop are no longer valid, and the evidence seized no longer admissible for reasons stated by the United States Supreme Court in *United States v. Brignoni-Ponce,* 422 U.S. 873, 95 S.Ct. 2574 (1975):

> We are unwilling to let the Border Patrol dispense entirely with the requirement that officers must have a reasonable suspicion to justify roving-patrol stops. [Footnote omitted] In the context of border area stops, the reasonableness requirement of the Fourth Amendment demands something more than the broad and unlimited discretion sought by the Government. Roads near the border carry not only aliens seeking to enter the country illegally, but a large volume of legitimate traffic as well. . . . To approve roving-patrol stops of all vehicles in the border area, without any suspicion that a particular vehicle is carrying illegal immigrants, would subject the residents of these and other areas to potentially unlimited interference with their use of the highways, solely at the discretion of Border Patrol Officers. The only formal limitation on that discretion appears to be the administrative regulation defining the term "reasonable distance" in § 287(a)(3) to mean within 100 air miles from the border. 8 C.F.R. § 287.1(a) (1975). Thus, if we approved the Government's position in this case, Border Patrol officers could stop motorists at random for questioning, day or night, anywhere within 100 air miles of the 2,000-mile border, on a city street, a busy highway, or a desert road, without any reason to suspect that they have violated any law.

> We are not convinced that the legitimate needs of law enforcement require this degree of interference with lawful traffic. . . .

> \* \* \* \* \* \*

*Id.* 95 S.Ct. at 2580.

Although the defendants' actions subsequent to being stopped most certainly created a reasonable suspicion of illegal conduct in the eyes of the officers, such actions are immaterial and cannot be considered by the Court since such a reasonable suspicion based on specific articulable facts clearly did not exist prior to the stop. The initial stop of the defendants' vehicle was an impermissible intrusion of their Fourth Amendment rights, thereby fatally tainting all acts that occurred thereafter. Whether the defendants' subsequent conduct was so suspicious as to give the officers probable cause to conduct the warrantless search of the defendants' vehicles is an issue this Court need not determine.

Therefore, after reviewing events leading up to the search and seizure in light of *Almeida-Sanchez, Ortiz* and *Brignoni-Ponce,* the Court finds that the officers actions in stopping the defendants' vehicles, in the absence of a reasonable suspicion that their vehicles were carrying illegal aliens, rendered the subsequent search constitutionally invalid and the evidence seized inadmissible. Accordingly, the defendants' Motion to Suppress is, hereby, granted.